PACKERLAND PACKING COMPANY OF TEXAS, INC., A Wholly Owned Subsidiary Of Packerland Packing Company, Inc., Petitioner-Cross Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.

No. 75–4490

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Sept. 3, 1976.

John F. Buergler, James A. Gilker, Hugo Swan, Jr., Fort Smith, Ark., for petitioner-cross respondent.

Elliott Moore, Deputy Assoc. Gen. Counsel, Aileen Armstrong, Eric Moskowitz, John S. Irving, Jr., Carl L. Taylor, N.L.R.B., John E. Higgins, Jr., Deputy Gen. Counsel, Washington, D. C., for respondent-cross petitioner.

W. Edwin Youngblood, Reg. Director, Region 16, Ft. Worth, Tex., for other interested parties.

James L. Hicks, Jr., Dallas, Tex., for Amalgamated Meat Cutters, etc., AFL–CIO.

Before COLEMAN, GOLDBERG and GEE, Circuit Judges.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al.,* 5 Cir., 431 F.2d 409, Part I.

PER CURIAM.

Packerland Packing Company of Texas petitions for review of a determination by the National Labor Relations Board that it committed unfair labor practices in violation of sections 8(a)(1) and 8(a)(2) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (a)(2). We find that the Board's cross-application for enforcement of its order should be granted and the petition for review denied on the basis of one of the three grounds stated by the Administrative Law Judge, whose decision the Board adopted. We need not, therefore, pass upon the other two grounds, though we note that they present very close questions indeed.

This dispute grows out of competition between Amalgamated Meat Cutters and Butcher Workmen of North America (Amalgamated) and the Independent Employees Union of Packerland (Independent) to represent the employees at Packerland's newly-acquired Pampa, Texas, meatpacking plant in the winter of 1973–74. At a time after Amalgamated had informed Packerland of Texas' parent corporation of its intention to seek representation of the Pampa workers and after both unions had engaged in organizing efforts, Independent representatives informed plant management that it had obtained the support of a majority of eligible workers. Without verifying all signatures on the petition presented by Independent, plant manager Howard Frankenthal recognized Independent and the next day negotiated a three-year collective bargaining agreement with it in 2½ hours.

The Board found that Packerland's summary recognition and bargaining with the Independent was motivated by the unlawful aim of averting the possibility that its employees would select Amalgamated as their representative. The Administrative Law Judge's opinion, adopted by the Board, noted that the first organizational meeting of the Independent took place one week after Amalgamated's notice to Packerland was mailed and that Packerland's president and sole director, who had previously expressed opposition toward representation of company workers by Amalgamated, visited the Pampa plant during the period of union competition. The opinion also stressed the fact that the Pampa plant manager, the son of Packerland's president, refused to hire an Amalgamated organizer as a rank and file worker, avowedly because of his union activity, during this period. The Board, with the Law Judge, concluded that this factual background warranted the inference that Packerland's summary recognition and quick negotiation of a contract with Independent was motivated by a desire to abort the Amalgamated campaign.

Packerland argues forcefully that the inference is insupportable. There was indeed no direct evidence of a connection between Packerland management and the Independent organizational effort, and the matter of the timing of the first Independent meeting, like the fact of summary recognition and bargaining, see *Suburban Transit Corp. v. NLRB*, 499 F.2d 78, 85–86 (3rd Cir. 1974), could not alone justify the Board's conclusion. But there was more: the discriminatory refusal to hire Rodriguez,[1] Packerland President S. W. Frankenthal's past attitudes and his visit to Pampa in mid-January, which was denied by his son, the plant manager. Indeed, the fact that the testimony of the plant manager and of the Independent president was described by the Administrative Law Judge as "evasive and argumentative" and "replete with contradictions" suggests some discrepancy between the employer's avowed policy

---

1. Packerland argues that the refusal to hire Rodriguez as a rank and file worker was diminished in probative value by the fact that he was offered a presumably better job as a foreman and three months later was offered a rank and file job. These circumstances do of course tend to negate animosity directed at Rodriguez personally, but they support rather than detract from the inference that the employer was hostile toward his union activity for Amalgamated. As a foreman, Rodriguez could not take part in that activity and his promotion therefore would serve to weaken the Amalgamated effort. And three months later, when Independent had been recognized and a three-year contract signed, there was no longer any immediate danger posed by his possible efforts on behalf of Amalgamated.

of neutrality and its actual policy. We find both that the credibility judgments of the Administrative Law Judge are supportable, and that the factual findings, which are supported by substantial evidence, warrant the rational inferences made by the Law Judge and the Board.[2] *See Suburban Transit Corp. v. NLRB, supra,* at 85 & n. 8.

The petition for review is DENIED and the cross-application for enforcement GRANTED.

---

2. Packerland also suggests that summary recognition of a union which commands majority support of the appropriate work unit is permissible even if motivated by a desire to freeze out an opposing union. But *Suburban Transit,* cited for that proposition, makes clear that this is true only when there is no basis for an infer-ence that, through other actions as well as summary recognition, the employer rendered assistance to one of the competing unions. Since there are grounds for such an inference in this case, we need not determine whether this court should follow the holding of the Third Circuit in *Suburban Transit.*